UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
THE NORTH FACE APPAREL CORP.,                    :

                                                 :

                    Plaintiff,                   :         REPORT AND
                                                 :         RECOMMENDATION
          -against-
                                                 :         12 Civ. 6688 (JGK) (GWG)

REBECCA MOLER et al.,                            :

                    Defendants.                  :
-------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge:**

      The North Face Apparel Corp. ("North Face") brought this action alleging claims arising

out of the unauthorized manufacturing and sale of goods bearing copies of North Face's

registered trademarks.  The defendants are Arthur F. Moler (d/b/a SC Liquidations, Inc. and

Authenbag), Rebecca Moler (d/b/a SC Liquidations, Inc. and Authenbag), To Phuc Hau (a/k/a

Steven and/or Pham The Quang), Calvin Bui (d/b/a North Face Initiative, LLC and North Face

Depot), Son Tran (d/b/a North Face Initiative, LLC, and North Face Depot), Phan Kim Dong,

Web Coast Concepts, Inc. (d/b/a TNF Deals, 70Cut, and www.tnfdeals.com) ("Web Coast"),

John Melwak, and Presco, Inc. ("Presco").  Three of the defendants, Hau, Bui, and Dong

(collectively, the "defendants"), have defaulted and the case is before the Court for a calculation

of damages.

I.      BACKGROUND

      North Face filed the original complaint in this action on August 31, 2012.  See

Complaint, dated Aug. 31, 2012, and filed Nov. 27, 2012 (Docket # 14) (previously filed under

seal as Docket # 3).  On September 4, 2012, North Face was granted a Temporary Restraining

Order, Seizure Order, Expedited Discovery Order, and Order to Show Cause for Preliminary

Injunction (Docket # 13) ("TRO") (previously filed under seal as Docket # 2).  Hau was served

on September 7, 2012, along with a copy of the TRO.  See Affidavit of Service, filed Apr. 17,

2013 (Docket # 41).  On November 30, 2012, North Face filed an amended complaint naming

additional defendants, including Bui.  See Amended Complaint, filed Nov. 30, 2012 (Docket

# 28).  Bui was served on December 18, 2012.  See Affidavit of Service, filed Dec. 19, 2012

(Docket # 29).  On May 3, 2013, North Face filed a second amended complaint naming

additional defendants, including Dong.  See Second Amended Complaint, filed May 3, 2013

(Docket # 46) ("Compl.").  Dong was served on May 9, 2013.  See Affidavit of Service, filed

May 14, 2013 (Docket # 53).

        North Face alleges claims for federal trademark counterfeiting, see Compl. ¶¶ 31-35,

federal trademark infringement, id. ¶¶ 36-39, unfair competition and false designation of origin,

id. ¶¶ 40-45, common law trademark and trade name infringement, ¶¶ 46-51, unfair competition

under New York state common law, id. ¶¶ 52-58, and unlawful deceptive acts and practices

under N.Y. Gen. Bus. L. § 349, id. ¶¶ 59-63.  Defendants failed to respond to the complaints, and

the Clerk has issued certificates of default.  See Clerk's Certificate of Default, filed Oct. 4, 2013

(Docket # 84); Clerk's Certificate of Default, filed Oct. 7, 2013 (Docket # 85); Clerk's

Certificate of Default, filed Nov. 14, 2013 (Docket # 91).

        On March 13, 2015, Judge Koeltl issued an Order to show cause why judgment by

default should not be entered against defendants.  See "[Proposed] Order to Show Cause for a

Default Judgment and Permanent Injunction Order," filed Mar. 16, 2015 (Docket # 111), at 2-3.

Defendants' answering papers were required to be filed by March 25, 2015, id. at 3, but they

failed to respond.  North Face filed papers in support of an entry of default judgment and

2

permanent injunction.  See Affidavit of Charles A. LeGrand in Support of Order to Show Cause

for Default Judgment and Permanent Injunction, filed Mar. 26, 2015 (Docket # 113) ("LeGrand

Aff."); Declaration of Randall Rabenold in Support of Order to Show Cause for Default

Judgment and Permanent Injunction, filed Mar. 26, 2015 (Docket # 114) ("2015 Rabenold

Decl.").  Defendants sought a judgment of $22,000,000 and a permanent injunction.  LeGrand

Aff. ¶¶ 64, 69.  On March 27, 2015, Judge Koeltl issued an Order finding that North Face is

entitled to a default judgment against defendants.[1]  See Order, filed Mar. 27, 2015 (Docket

# 116).  The matter has been referred to the undersigned for an inquest as to damages.  See Order

of Reference to a Magistrate Judge, filed Mar. 27, 2015 (Docket # 115).

On March 30, 2015, the Court gave defendants until May 14, 2015, to oppose North

Face's request for a judgment in the amount of $22,000,000 against them, see Scheduling Order,

filed Mar. 30, 2015 (Docket # 117) ("March 30 Order"), ¶¶ 1-2, but they never filed a response.

Because the default order entered in this case establishes defendants' liability, see Bambu

Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995) (citation omitted), the only

remaining issue is whether North Face has supplied adequate support for the relief it seeks.  See

Kuruwa v. Meyers, 823 F. Supp. 2d 253, 256 (S.D.N.Y. 2011), aff'd, 512 F. App'x 45 (2d Cir.

2013); accord GAKM Res. LLC v. Jaylyn Sales Inc., 2009 WL 2150891, at *2 (S.D.N.Y. July

---

[1]  Judge Koeltl's Order refers to a default judgment against "the remaining defendants." Hau, Bui, and Dong are the only remaining defendants.  See Permanent Injunction and Final Judgment on Consent as to Defendant Presco, Inc., filed Jan. 8, 2014 (Docket # 94); Permanent Injunction and Final Judgment on Consent as to Defendants Arthur F. Moler (d/b/a SC Liquidations, Inc. and Authenbag) and Rebecca (née Harper) Moler (d/b/a SC Liquidations, Inc. and Authenbag), filed Mar. 4, 2014 (Docket # 98); Permanent Injunction and Final Judgment on Consent as to Defendants Web Coast Concepts, Inc. (d/b/a TNF Deals, 70Cut and www.tnfdeals.com) and John Melwak, filed Mar. 4, 2014 (Docket # 99); Permanent Injunction and Final Judgment on Consent as to Defendant Son Tran (d/b/a North Face Initiative, LLC and North Face Depot), filed Dec. 4, 2014 (Docket # 109).

20, 2009).  The Second Circuit has held that a damages inquest may be held on the basis of

documentary evidence alone "as long as [the court has] ensured that there was a basis for the

damages specified in [the] default judgment."  Fustok v. ContiCommodity Servs., Inc., 873 F.2d

38, 40 (2d Cir. 1989); accord Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir.

1991).  The March 30 Order notified the parties that the Court would conduct the inquest based

upon the written submissions of the parties unless a party sought an evidentiary hearing.  See

March 30 Order ¶ 3.  No party has requested an evidentiary hearing.  Moreover, because North

Face's submissions provide a basis for an award of damages, no hearing is required.

II.     FINDINGS OF FACT AND CONCLUSIONS OF LAW

       In light of defendants' default, North Face's properly pleaded allegations, except those

related to damages, are accepted as true.  See, e.g., City of New York v. Mickalis Pawn Shop,

LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant

who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.")

(quoting Vt. Teddy Bear Co., Inc. v. 1–800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004));

Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) ("In light of [defendant's] default, a court

is required to accept all . . . factual allegations as true and draw all reasonable inferences in

[plaintiff's] favor.") (citation omitted).  Thus, the Court's findings of fact are based on the

allegations in North Face's second amended complaint regarding liability and the admissible

evidence regarding damages contained in its submissions.

       A.      Facts Relating to Liability

       North Face is a Delaware corporation with its principal place of business in Wilmington,

Delaware.  Compl. ¶ 1.  Hau is an individual believed to be doing business or residing in Ho Chi

Minh City, Vietnam.  Id. ¶ 4.  Bui is an individual whose physical address is unknown.  Id. ¶ 5.

Dong is an individual believed to reside and/or do business from Vietnam.  Id. ¶ 7.

North Face is the owner of federally registered trademarks and service marks and owns common law rights in these and other marks for use in connection with apparel, backpacks, and other products, and common law rights in various marks consisting of or incorporating the letters "TNF."  Id. ¶¶ 18-19 (collectively, "North Face Marks").  North Face sells "high quality technical and casual outdoor apparel, equipment, including backpacks, and other products" (the "North Face Products") using its North Face Marks.  Id. ¶ 20.  The North Face Marks are "widely promoted," id. ¶ 21, and North Face "maintains control standards for all" North Face Products, which are distributed through a "worldwide network of authorized licensees, distributors, and retailers," id. ¶ 22.  "In 2010 alone, . . . North Face spent many millions of dollars advertising and promoting the North Face Products, which prominently bear the . . . North Face Marks."  Id. ¶ 23.

Defendants have "manufactured, imported, distributed, offered for sale and/or sold counterfeit goods . . . bearing counterfeits of the North Face Marks" (the "Counterfeit Products"), and "they continue to do so."  Id. ¶ 25.  Bui operates "at least two retail websites, using domain names that infringe the North Face Marks, and purporting to sell genuine . . . North Face® branded goods, but which in fact sell Counterfeit Products."  Id. ¶ 26.  Dong also "owns and uses [a] domain name . . . in connection with her infringing activities."  Id. Defendants also offer Counterfeit Products for sale on "pages set up on online retail marketplaces such as eBay and Amazon."  LeGrand Aff. ¶ 23; see Compl. ¶ 27.  The Counterfeit Products sold by defendants are not genuine North Face Products, and North Face did not "manufacture, inspect or package the Counterfeit Products and did not approve the Counterfeit Products for sale or distribution."  Id. ¶ 29.  Defendants' use of the North Face Marks "on or in

connection with the advertising, marketing, distribution, offering for sale and sale of the Counterfeit Products is likely to cause and has caused confusion, mistake and deception by and among consumers and is irrevocably harming [North Face]." Id. ¶ 30.

B.      Facts Relating to Damages

North Face has purchased samples from defendants that North Face subsequently determined to be Counterfeit Products. Declaration of Rick Griffin, filed Nov. 27, 2012 (Docket # 16), ¶¶ 12-13; Declaration of Brandon Blucher, dated Nov. 8, 2012 and filed July 15, 2015 (Docket # 119) ("Nov. 8 Blucher Decl."), ¶¶ 9-11. North Face has also identified "no less than eleven counterfeit mark/goods combinations." LeGrand Aff. ¶ 64; see 2015 Rabenold Decl. ¶ 4.

Defendants have been operating since at least as early as late 2009 to early 2010. See Exs. H and L to Supplemental Declaration of Charles LeGrand, filed June 3, 2013 (Docket # 74) ("LeGrand Decl."); Declaration of Randall Rabenold, filed May 6, 2013 (Docket # 45) ("2013 Rabenold Decl."), ¶¶ 6-9; Ex. C to Nov. 8 Blucher Decl. When North Face originally became aware of defendants' infringing activities, Hau was selling Counterfeit Products on the website www.authenbag.com and on eBay under the user name "Authenbag." See LeGrand Aff. ¶ 41; see Declaration of Brandon Blucher, dated Aug. 31, 2012 and filed Nov. 27, 2012 (Docket # 17) ("Aug. 31 Blucher Decl."), ¶¶ 4-22; 2013 Rabenold Decl. ¶ 6. The Counterfeit Products were also advertised through a variety of social media websites, including Twitter, Blogspot, Facebook, and Squidoo, see Aug. 31 Blucher Decl. ¶ 26 & Exs. J-N, and were offered for sale around the world, see id. ¶ 25 & Ex. I; Ex. F to LeGrand Decl. Following the Court's injunctive orders, Dong and Hau continued to sell Counterfeit Products on eBay under the user name "Authenbiz." LeGrand Aff. ¶¶ 8, 43; see 2013 Rabenold Decl. ¶¶ 7-8, 11, & Exs. A-C. Additionally, Hau was involved with the sale and distribution of Counterfeit Products by Web

6

Coast and Melwak.  See id. ¶¶ 10, 13-26.  Web Coast and Melwak sold Counterfeit Products on additional eBay selling pages, LeGrand Aff. ¶ 43; see Exs. C and M to LeGrand Decl.; 2013 Rabenold Decl. ¶¶ 13-17, through Amazon.com and Bonanza.com, Exs. C and E to LeGrand Decl., and on the website www.tnfdeals.com, 2013 Rabenold Decl. ¶¶ 18-26.

Bui and Tran operated at least two retail websites that purported to sell genuine North Face goods but actually sold Counterfeit Products.  Nov. 8 Blucher Decl. ¶¶ 8-11.  Bui is also associated with at least some of Hau's infringing activities.  In an email conversation with Arthur Moler, who was using the email address scliquidations@aol.com, Bui discussed the potential sale of a variety of North Face Products, stating, "At the moment we have 2010 Hot Shot in various colors. . . . The same goes for 2010 Surges. . . . If you are looking for 2009, we have ton [sic] of them in our warehouse. . . ."  Ex. A to Nov. 8 Blucher Decl. (ellipses in original).  Prior to the Court's injunctive orders, Arthur Moler had aided Hau in his operation of the www.authenbag.com website and the "Authenbag" eBay account.  2013 Rabenold Decl. ¶ 6; see also Aug. 31 Blucher Decl. ¶ 4 (noting that the PayPal account information for the "eBay Authenbag store" is associated with SC Liquidations, Inc. and the email address scliquidations@aol.com).

The Counterfeit Products were sold in the range of approximately $46 to $80 each.  See Exs. B, C, and E to 2013 Rabenold Decl.  Comments on the "Authenbiz" eBay selling page alone demonstrate that Hau sold hundreds of Counterfeit Products since the entry of the Court's injunctive orders.  See 2013 Rabenold Decl. ¶ 6.  One PayPal account — which was used by Hau for payments while doing business under the "Authenbag" user name, see id. ¶ 8, Aug. 31 Blucher Decl. ¶ 20, was in Dong's name, Ex. L to LeGrand Decl.; see 2013 Rabenold Decl. ¶ 11; Blucher Decl. ¶ 20, and was associated with the email addresses authenbag@gmail.com and

authenbiz@gmail.com — reflects receipt of $356,873.06, see Ex. L to LeGrand Decl.  In an

email between Hau and Presco, Hau represented that he "was in this business for 3 years and . . .

sold over 1.5 million US on Ebay."  Ex. H to LeGrand Decl.; see LeGrand Decl. ¶ 3.

    North Face ultimately sought and obtained  a contempt order against Hau for violation

of the Court's prior injunctive orders.  See Order for Contempt as to Defendant To Phuc Hau,

filed July 25, 2013 (Docket # 80) ("Contempt Order"), at 4.

    B.    Statutory Damages

        1.    Applicable Law

North Face seeks monetary damages under the Lanham Act, which provides:

> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of
> this title) in connection with the sale, offering for sale, or distribution of goods or
> services, the plaintiff may elect, at any time before final judgment is rendered by
> the trial court, to recover, instead of actual damages and profits under subsection
> (a) of this section, an award of statutory damages for any such use in connection
> with the sale, offering for sale, or distribution of goods or services in the amount
> of–
>
> (1) not less than $1,000 or more than $200,000 per counterfeit mark per
> type of goods or services sold, offered for sale, or distributed, as the court
> considers just; or
>
> (2) if the court finds that the use of the counterfeit mark was willful, not more
> than $2,000,000 per counterfeit mark per type of goods or services sold, offered
> for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c).  Section 1117(c) was enacted to address the difficulty of calculating actual

damages caused by counterfeiters.  See, e.g., Pitbull Prods., Inc. v. Universal Netmedia, Inc.,

2007 WL 3287368, at *3 (S.D.N.Y. Nov. 7, 2007); Rodgers v. Anderson, 2005 WL 950021, at

*2 (S.D.N.Y. Apr. 26, 2005) ("The rationale for this section is the practical inability to determine

profits or sales made by counterfeiters.") (citations omitted); Gucci Am., Inc. v. Duty Free

Apparel, Ltd., 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004) ("Congress added the statutory

damages provision of the Lanham Act in 1995 because 'counterfeiters' records are frequently nonexistent, inadequate, or deceptively kept . . . , making proving actual damages in these cases extremely difficult if not impossible.'") (quoting S. Rep. No. 104-177, at 10 (1995))), amended in part, 328 F. Supp. 2d 439 (2004), overruled on other grounds by Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 106, 111 (2d Cir. 2012); Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) (same).

Section 1117(c), however, "does not provide guidelines for courts to use in determining an appropriate award as it is only limited by what the court considers just." Gucci Am., 315 F. Supp. 2d at 520 (internal citation and quotation marks omitted).  Many courts have looked to an analogous provision in the Copyright Act for guidance, see 17 U.S.C. § 504(c), and have considered the following factors in setting statutory damage awards under the Lanham Act: (1) "the expenses saved and the profits reaped;" (2) "the revenues lost by the plaintiff;" (3) "the value of the copyright;" (4) "the deterrent effect on others besides the defendant;" (5) "whether the defendant's conduct was innocent or willful;" (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced;" and (7) "the potential for discouraging the defendant." Philip Morris USA Inc. v. A & V Minimarket, Inc., 592  F. Supp. 2d 669, 673 (S.D.N.Y. 2009) (citations and internal quotation marks omitted); accord Ermenegildo Zenga Corp. v. 56th St. Menswear, Inc., 2008 WL 4449533, at *1, 5 (S.D.N.Y. Oct. 2, 2008); Malletier v. WhenU.Com, Inc., 2007 WL 257717, at *4 (S.D.N.Y. Jan. 26, 2007).  "Where . . . a defendant is shown to have acted willfully, a statutory award should incorporate not only a compensatory, but also a punitive component to discourage further wrongdoing by the defendants and others." Malletier v. Carducci Leather Fashions, Inc., 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009) (citations omitted).

9

2.    Analysis

North Face seeks damages in the amount of $2,000,000 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as authorized by 15 U.S.C. § 1117(c)(2)." LeGrand Aff. ¶ 63 (internal quotation marks omitted).  North Face has identified 11 "counterfeit mark/goods combinations," id.; see 2015 Rabenold Decl. ¶ 4, and therefore seeks the "maximum statutory damages in the amount of 22 million dollars," LeGrand Aff. ¶ 64.

Defendants' violations of the trademark law are established by virtue of their failure to controvert the evidence of counterfeiting alleged in the complaint.  These facts alone require an award of between $1,000 and $200,000 per counterfeit mark.  15 U.S.C. § 1117(c)(1).  An award of up to $2,000,000 would be permitted if the Court finds the violations to be willful. 15 U.S.C. § 1117(c)(2).

"[B]y virtue of their default [defendants] are deemed to be willful infringers."[2] Lane Crawford LLC v. Kelex Trading (CA) Inc., 2013 WL 6481354, at *3 (S.D.N.Y. Dec. 3, 2013) (collecting cases); Burberry Ltd. v. Euro Moda, Inc., 2009 WL 4432678, at *3 (S.D.N.Y. Dec. 4, 2009); Luban, 282 F. Supp. 2d at 124; Fallaci v. New Gazette Literary Corp., 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983).  Defendants' failure to respond either to the complaint or to the papers seeking a default judgment has left the Court with no information as to any of the factors relating to defendants' circumstances.  Thus, the Court draws every reasonable inference on these points against defendants, and finds that defendants' infringement was willful.  Accordingly, North

---

[2]  Similarly, courts applying the treble damages provision for trademark infringement under 15 U.S.C. § 1117(b) of the Lanham Act have found that "[w]illfulness may be established by a party's default because an innocent party would presumably have made an effort to defend itself."  Chloe v. Zarafshan, 2009 WL 2956827, at *7 (S.D.N.Y. Sept. 15, 2009) (citations omitted).

Face are entitled to an amount the Court considers "just," not to exceed $2,000,000 per

counterfeit mark per type of goods or services sold, offered for sale, or distributed.  15 U.S.C.

§ 1117(c)(2).

      As to the first two factors, the record fails to show the full extent of the expenses saved

and profits reaped by defendants and the revenues lost by North Face.  However, "defendants

have declined to participate in this lawsuit, and have thus deprived [North Face] of the

opportunity to make a meaningful assessment of the extent of their business, including volume

of sales and profits earned." Polo Ralph Lauren, L.P. v. 3M Trading Co. Inc., 1999 WL

33740332, at *6 (S.D.N.Y. Apr. 19, 1999).  Moreover, the Court can "infer that defendants were

earning more than minimal profits, as reflected by their persistence in continuing this business

over a period of years." Id.  Additionally, there is significant evidence that the counterfeiting by

these defendants was extensive, inasmuch as Hau represented that he "was in this business for 3

years and . . . sold over 1.5 million US on Ebay."  Ex. H to LeGrand Decl.; see LeGrand Decl.

¶ 3.  Also, defendants used numerous websites, in addition to popular online marketplaces such

as eBay and Amazon.  See Aug. 31 Blucher Decl. ¶¶ 4-22; Nov. 8 Blucher Decl. ¶¶ 8-11 & Ex.

A; 2013 Rabenold Decl. ¶ 6-8, 10-11,13-26 & Exs. A-C; Exs. C, E, and M to LeGrand Decl.;

LeGrand Aff. ¶ 43.  These websites provided Hau and Dong "with a 'virtually limitless number

of customers,' which counsels in favor of higher damages," Rolex Watch, U.S.A., Inc. v. Pharel,

2011 WL 1131401, at *5 (E.D.N.Y. Mar. 11, 2011) (citation omitted).

      As to the third factor, the record does not indicate the monetary value of North Face's

trademarks.  However, it shows that North Face sells "high quality technical and casual outdoor

apparel, equipment, including backpacks, and other products," Compl. ¶ 20, and that the North

Face Marks have been "widely promoted" and are "among the world's most famous and widely-

recognized trademarks," id. ¶ 21.  Thus, we can "'infer from the well-known reputations of most or all of the trademarks and the sea of advertising that presses them on the consciousness of the buying public that they are indeed valuable.'"  Lane Crawford, 2013 WL 6481354, at *4 (quoting Polo Ralph Lauren, 1999 WL 33740332 at *6) (additional citation omitted); see also Louis Vuitton Malletier, S.A. v. LY USA, 2008 WL 5637161, at *2 (S.D.N.Y. Oct. 3, 2008) (finding the plaintiff's trademarks "highly valuable" because the plaintiff "actively promoted" its "logo, its accompanying motifs, and the composite mark without interruption for over 150 years"), aff'd, 676 F.3d 83 (2d Cir. 2012) and 472 F. App'x 19 (2d Cir. 2012).

The remaining factors also weigh in favor of North Face.  A substantial award is necessary to further the "goal of deterring similar conduct by other enterprises."  Id. at *2 (citation omitted); see also Coach, Inc. v. O'Brien, 2012 WL 1255276, at *14 (S.D.N.Y. Apr. 13, 2012) ("Although nothing in the record demonstrates whether [plaintiff] lost any revenue from [defendant's] infringement, the goal of deterring similar conduct generally requires a significant award.").  As to the fifth factor, we find that defendants' activity was willful, as discussed above.  Sixth, defendants have failed to participate in this litigation, and thus have deprived North Face of any records from which to assess the value of the infringing materials.  Finally, a substantial award is necessary to discourage defendants from continuing to engage in their illicit conduct.  Defendants' willful misconduct and failure to appear in this litigation merits a finding that "a slight damage award is unlikely to deter them from continuing their illegal business."  Louis Vuitton Malletier, 2008 WL 5637161, at *2 (citations omitted).

As a result of the above analysis, we find that "a fairly substantial financial award is appropriate, if for no other reason, to ensure adequate deterrence against the continuation of this conduct by these defendants."  Polo Ralph Lauren, 1999 WL 33740332, at *6.  In light of the

fact that there is evidence of sales of $1,500,000 worth of goods, and that there is no reason to

believe that this number represents the full extent of defendants' operations, we find that an

award of $1,000,000 for each of the eleven combinations of counterfeit marks and goods is

appropriate in this case and sufficient to both compensate North Face for the damages caused by

these defendants and to further the goals of specific and general deterrence.  See generally

Tiffany (NJ) LLC v. Dong, 2013 WL 4046380, at *6-7 (S.D.N.Y. Aug. 9, 2013) (awarding

$1,000,000 for each of the nine types of goods where the defendants "actively operated

numerous websites," and offered more than 10,000 counterfeit items for sale, which suggested a

"large-scale counterfeiting enterprise"); Nike, Inc. v. Top Brand Co., 2006 WL 2946472, at *

(S.D.N.Y. Feb. 27, 2006) (awarding $1,000,000 per mark per type of good for eight types of

goods where evidence showed that defendants produced "millions of infringing goods" and took

steps during the litigation to "conceal information about their infringing activities").

Accordingly, North Face should be awarded $11,000,000 in statutory damages.

     C.    Injunctive Relief

     In addition to monetary damages, North Face seeks a permanent injunction enjoining

defendants from further infringing or otherwise violating North Face Marks.  LeGrand Aff.

¶¶ 67-69.  Specifically, North Face seeks to enjoin defendants from

     (a) using the North Face Marks or any reproduction, counterfeit, copy or
     colorable imitation of the . . . North Face Marks in connection with the
     distribution, advertising, offer for sale and/or sale of merchandise not the genuine
     products of Plaintiff; and

     (b) utilizing the infringing domain names northfaceinitiative.yolasite.com and
     northfacedepot.ecrater.com, or the email address northfacedepot949@yahoo.com;
     or registering and/or utilizing any additional domain names or email addresses
     that incorporate any of the . . . North Face Marks; and

     (c) passing off, inducing or enabling others to sell or pass off any goods not the

genuine products of Plaintiff as and for Plaintiff's authentic products; and

(d) shipping, delivering, holding for sale, distributing, returning, transferring or otherwise moving, storing or disposing of in any manner backpacks or other items falsely bearing the . . . North Face Marks, or any reproduction, counterfeit, copy or colorable imitation of same; and

(e) otherwise competing unfairly with Plaintiff, through the advertising, offering for sale, or sale of any product infringing . . . North Face Marks in any manner; and

(f) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (a) through (e).

[Proposed] Default Judgment and Permanent Injunction Order (annexed as Ex. C to LeGrand Aff.), at 4.

"A court may issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." Kingvision Pay-Per-View Ltd. v. Lalaleo, 429 F. Supp. 2d 506, 516 (E.D.N.Y. 2006) (citation and internal quotation marks omitted). To obtain a permanent injunction, a plaintiff must show:

(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction..

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006); accord Rovio Entm't, Ltd. v. Allstar Vending, Inc., 2015 WL 1508497, at *6 (S.D.N.Y. Apr. 1, 2015) (citations omitted); Laboratorios Rivas, SRL v. Ugly & Beauty, Inc., 2013 WL 5977440, at *11 & n.11 (S.D.N.Y. Nov. 12, 2013); Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Kun Fung USA Trading Co. Inc., 2012 WL 1414872, at *5 (E.D.N.Y. Jan. 20, 2012); U.S. Polo Ass'n, Inc. v. PRL USA

14

Holdings, Inc., 800 F. Supp. 2d 515, 539 & n.16 (S.D.N.Y. 2011) ; see also Salinger v. Colting,
607 F.3d 68, 77-78 n.7 (2d Cir. 2010) (suggesting that the standard articulated by the Supreme
Court in eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006), applies to all applications for
injunctions).

Here, the first requirement is met inasmuch as "the Lanham Act expressly provides that
federal courts have the power to 'grant injunctions, according to the principles of equity' in
trademark infringement cases."[3] Dong, 2013 WL 4046380, at *8 (quoting 15 U.S.C. § 1116(a)).

As to the requirements for a permanent injunction, the eBay factors weigh in favor of
issuing the requested injunction.  "In a trademark case, irreparable injury is established where
there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to
be misled, or indeed simply confused, as to the source of the goods in question."  Lobo Enters.,
Inc. v. Tunnel, Inc., 822 F.2d 331, 333 (2d Cir. 1987) (citation and internal quotation marks
omitted); see Malletier v. Burlington Coat Factory Warehouse Corp., 426 F.3d 532, 537 (2d Cir.
2005) ("In trademark disputes, a showing of likelihood of confusion establishes . . . irreparable
harm.") (citation and internal quotation marks omitted).  Accepting its allegations as true, North
Face has alleged likelihood of confusion and thus also has established irreparable injury.  See
Compl. ¶ 30 ("Defendants' use of [North Face's] . . . North Face Marks . . . is likely to cause and
has caused confusion, mistake and deception by and among consumers and is irrevocably

---

[3]  We note that while North Face alleges a claim for trademark counterfeiting under the
Lanham Act, see Compl. ¶¶ 31-35, "the Lanham Act does not provide for a separate cause of
action for counterfeiting; rather, it provides for specific kinds of relief for trademark
infringement claims based on the sale of counterfeit goods," Rovio Entm't, 2015 WL 1508497,
at *5 n.2 (citing Car-Freshener Corp. v. Excellent Deals, Inc., 2011 WL 3846520, at *2
(E.D.N.Y. Aug. 1, 2010); Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc., 702 F. Supp.
104, 114 (E.D.N.Y. 2010)).

harming [North Face]); see also Laboratorios Rivas, 2013 WL 5977440, at *11 ("As noted

above, [defendant's] default constitutes an admission of liability as to the trademark

infringement claim such that Plaintiff has established a likelihood of confusion from which

irreparable harm is presumed.").

    Defendants past behavior, including their extensive operations and at least one

defendant's violation of the Court's prior injunctive orders, see Contempt Order at 4, suggests

that defendants "might continue to engage in infringing activities and counterfeiting unless

enjoined by the Court, demonstrating the danger that monetary damages will fail to fully provide

[North Face] with relief," Rovio Entm't, 2015 WL 1508497, at *7; see also Laboratorios Rivas,

2013 WL 5977440, at *11 ("The second eBay factor, no adequate remedy at law, is satisfied

where the record contains no assurance against defendant's continued violation of Plaintiff's

trademark," and "[w]here default is entered, [a] court may infer from a defendant's default that it

is willing to, or may continue its infringement.") (citations and internal quotation marks

omitted).  Moreover, "[a]s a result of defendants' infringement, plaintiff stands to lose its

accumulated good will and reputation for quality—losses that are not easily remedied by

monetary damages." Koon Chun Hing Kee Soy & Sauce Factory, 2012 WL 1414872, at *5

(citing Essie Cosmetics, Ltd. v. Dae Do Int'l, Ltd., 808 F. Supp. 952, 957 (E.D.N.Y. 1992)).

    "As to the balance of hardships, '[i]t is axiomatic that an infringer . . . cannot complain

about the loss of ability to offer its infringing product.'" Rovio Entm't, 2015 WL 1508497, at *7

(quoting WPIX, Inc. v. ivi, Inc., 691 F.3d 275, 287 (2d Cir. 2012)) (alteration in original).

Finally, "'the public has an interest in not being deceived—in being assured that the mark it

associates with a product is not attached to goods of unknown origin and quality.'" Id. (quoting

N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010)).

Accordingly, the Court should enter the permanent injunction requested by North Face as set forth above.

III.    CONCLUSION

For the foregoing reasons, North Face should be awarded a judgment against defendants To Phuc Hau, Calvin Bui, and Phan Kim Dong in the amount of $11,000,000, and a permanent injunction should be entered as described above. North Face shall send a copy of this Report and Recommendations to any known email addresses of defendants and shall file proof of service.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. John G. Koeltl at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Koeltl. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: July 16, 2015
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge